UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER KLEIN,<br><br>       Plaintiff,<br><br>    v.<br><br>AT&T CORP.,<br><br>       Defendant. | 23 Civ. 11038 (DEH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

 *Pro se* Plaintiff Jennifer Klein ("Plaintiff" or "Klein") brings this action against Defendant AT&T Mobility, LLC[1] ("Defendant" or "AT&T") seeking relief under the Fair Credit and Reporting Act, 15 U.S.C. § 1681 *et seq*. *See generally* Compl., ECF No. 1-1. Before the Court is Defendant's motion to (1) enforce settlement, and (2) to stay Plaintiff's motion for summary judgment and Defendant's own motion to compel arbitration. ECF No. 18. For the reasons set forth below, Defendant's motion is **DENIED** as to all parts.

## BACKGROUND

### I. Procedural History

 This case was removed from state court on December 20, 2023, and referred to Hon. Robyn F. Tarnofsky for general pretrial management on January 11, 2024. *See* ECF No. 1; Jan.11, 2024 Minute Entry. On February 9, 2024, Defendant filed a motion to compel arbitration. *See* ECF No. 9. On March 15, 2024, Plaintiff filed a motion for summary judgment. *See* ECF No. 16. On March 19, 2024, Defendant sought to stay Plaintiff's motion for summary judgment and its own motion to compel arbitration, and instead requested that the Court enforce

---

[1] AT&T notes that it has been "erroneously identified" in this action as "AT&T Corp." *See* Def.'s Answer 1, ECF No. 4.

a settlement agreement purportedly entered into by the parties. *See* ECF No. 18. On April 10, 2024, Plaintiff filed a motion to amend her pleadings to add her husband, Todd Klein ("Mr. Klein"), as a party to the suit. *See* ECF No. 27. On April 11, 2024, Judge Tarnofsky granted Plaintiff's request to withdraw her motion for summary judgment. *See* ECF No. 24. On April 24, 2024, Judge Tarnofsky granted Defendant's application for a stay of all proceedings pending the undersigned's ruling on the fully briefed motion to enforce settlement. *See generally* ECF No. 38.

## II. Factual History

The parties dispute whether they reached a settlement agreement during an email exchange. The following facts are drawn from documents attached to Defendant's brief and incorporated by reference by both parties.

On February 20, 2024, AT&T counsel emailed Mr. Klein an "official[] offer [of] $5,000 plus debt waiver and tradeline deletion." ECF No. 19-1 at 6.[2] Mr. Klein's response, sent via email the same day, "urge[d] [Defendant] to reconsider the minimal $6,500 settlement offer." *Id.* at 5. That afternoon, Defendant emailed Mr. Klein a counteroffer of "$5,250, plus debt waiver and tradeline deletion." *Id.* at 3-4.

On February 22, 2024, Mr. Klein sent an email to AT&T counsel that stated as follows:

> I would rather avoid the extra time and effort as I am sure you would also, even though I believe my opposition motion would make a notable impact - and just settle now if we can agree. Your last offer was $5250, mine was $6250. That makes $5750 if we meet halfway . . . . If you agree, both Jennifer and I will sign your release if you can email it to me today.

---

[2] Page numbers are in reference to ECF numeration, rather than to internal page numbers.

*Id*. at 3.  Defendant once again replied with a counteroffer: "if you will agree to $5,500, we have a deal."  *Id*. at 2.  In a response sent the same day, Mr. Klein wrote: "Knew you were going to do that. Ok. Send it."  *Id*.

On February 25, 2024, Mr. Klein sent an email to AT&T counsel that stated as follows:

> I just wanted to clarify my earlier message regarding the settlement offer. My response "Ok. Send it." was meant to express my willingness to review the proposed settlement agreement in detail. I look forward to receiving the agreement so I can carefully consider its terms. Please understand that my final acceptance is contingent upon my agreement after a thorough review. Thank you for your understanding and for facilitating this part of the process. I appreciate your efforts to resolve this matter and look forward to reviewing the proposed agreement.

ECF No. 19-2 at 2.  Defendant represents that it forwarded the proposed written settlement agreement to Plaintiff the following day.  *See* Def.'s Mem. of L. in Supp. of Mot. to Enforce Settlement and Stay Mot. to Enforce Arbitration and Mot. for Summ. J. ("Def.'s Br.") 2, ECF No. 19.  Defendant has attached an unsigned copy of the settlement agreement and release of liability to its motion.  *See* Proposed Settlement Agreement, ECF No. 19-3.

On February 29, 2024, AT&T counsel confirmed that it had submitted a tradeline deletion request on January 14, 2024 (i.e., more than one month before the parties purportedly entered into the settlement agreement that AT&T seeks to enforce on this motion).  *See* ECF No. 19-4 at 2.  That same day, in an email sent from an account associated with Jennifer Klein but apparently written by Mr. Klein, Mr. Klein wrote:

> Jennifer and I are really having a really hard time accepting the $5500 settlement proposal. We all know we can get a substantially more equitable, fair, and just ruling in court or arbitration. My original 10K was and is probably the only amount that we feel a quick settlement is justified, and not feel guilty for accepting, solely because of the unexpected medical expenses.
>
> . . . However, if you could go up to, at the very least, $7500 by Monday, I will now accept the terms you have written. My only concern was that I seem to remember that somewhere in our correspondence you said the deletion was a temporary courtesy, but I trust you, after your sincere prompt and responsive actions. So if you can just clarify that it is not "temporary" that would be helpful.

3

> In any event if we do not hear from you regarding the $7500, we will promptly be in contact with you next week regarding our decision.

*Id*. There is no record of further email correspondence between the parties.

## LEGAL STANDARDS

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).[3] In entering into settlement agreements, "parties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement." *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). "Oral" agreements include those made via email. *See Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, No. 04 Civ. 1621, 2005 WL 1377853, at *5 (S.D.N.Y. June 9, 2005). Importantly, "if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then." *Ciaramella*, 131 F.3d at 322. To determine whether parties intended to be bound by oral or written agreement, courts

> must consider (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. No single factor is decisive, but each provides significant guidance.

*Id*. at 323 (*citing Winston v. Mediafare Entm't Corp.,* 777 F.2d 78, 80 (2d Cir. 1985) (hereinafter the "*Winston* factors"). While "[n]o single factor is decisive, [] each provides significant guidance." *Id*.

---

[3] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

Additionally, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). This means that because Plaintiff proceeds *pro se*, her submissions are "construed liberally and interpreted to raise the strongest arguments that they suggest." *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 457 (2d Cir. 2022).

## DISCUSSION

For the reasons discussed herein, the Court concludes that there was no binding settlement agreement between the parties.[4] Accordingly, Defendant's motion is denied.

Defendant argues that it entered into a binding settlement agreement with Plaintiff, notwithstanding the absence of a signed and executed written document. According to Defendant, "[t]he final agreement was reached when counsel for AT&T made a written offer to settle," to which Plaintiff's husband, who is not currently a party to this suit, responded, "'I knew you were going to do that. **Ok. Send it**.'" *See* Def.'s Br. 2 (citing ECF No. 19-1 at 2) (emphasis in Defendant's briefing). Plaintiff argues that her husband's statement "was made in a context of seeking clarity and the opportunity for careful consideration, not an unconditional acceptance of a unilateral agreement that we had never laid eyes on before." Pl.'s Opp'n to Def.'s Mot. to Enforce Settlement ("Pl.'s Opp'n") 4, ECF No. 21. Applying the *Winston* factors below, the Court agrees with Plaintiff and concludes that there is no binding agreement for it to enforce.

---

[4] Although not disputed by the parties, the Court notes "that the question of whether federal or state law controls the enforceability of a settlement agreement in this context is an open one." *Figueroa v. New York City Dep't of Sanitation*, 475 Fed. Appx. 365, 366 (2d Cir. 2012). At any rate, the Second Circuit has found "no material difference between the applicable state law or federal common law standard." *Ciaramella,* 131 F.3d at 322.

5

### A. Factor One

In determining whether the parties intended to be bound by the above-described email exchange, the Court first considers "whether there has been an express [or implied] reservation of the right not to be bound in the absence of a writing." *Winston*, 777 F.2d at 80. Here, the Court concludes that such a right was reserved, as several "paragraphs of the proposed agreement indicate that the parties contemplated the moment of signing," and not any earlier communication, "as the point when the settlement would become binding." *Ciaramella*, 131 F.3d at 324.

First, the agreement states that it is "contractual," "contains the *entire agreement* between the Parties," and "may be *executed* in multiple counterparts." Proposed Settlement Agreement ¶¶ 11, 12, 16 (emphases added). "This language demonstrates that only the terms of the settlement agreement, and not any preexisting pact, would legally bind the parties." *Ciaramella*, 131 F.3d at 324.

Second, the agreement "emphasize[s] the execution of the document." *Id*. at 325. Specifically, in its final paragraph, directly above the (blank) signature lines, it states in relevant part as follows:

> THE PARTIES HAVE: (A) READ THIS AGREEMENT CAREFULLY; (B) OBTAINED THE ADVICE OF LEGAL COUNSEL OR HAVE VOLUNTARILY ELECTED NOT TO DO SO; AND (C) ARE FULLY INFORMED OF THE CONTENT AND MEANING OF THIS SETTLEMENT AND RELEASE. CLAIMANTS ARE EXECUTING THIS NEGOTIATED SETTLEMENT AND RELEASE VOLUNTARILY AND NOT UNDER DURESS OF ANY KIND.
>
> IN WITNESS WHEREOF, the undersigned has hereunto set their hands and seal.

Proposed Settlement Agreement ¶ 17. The Court concludes from this paragraph that Plaintiff's "signature was meant to signify h[er] voluntary and informed consent to the terms and

obligations of the agreement. By not signing, [s]he demonstrated that [s]he withheld such consent." *Ciaramella*, 131 F.3d at 325.

Defendant does not contest that the "parties contemplated that the terms of their agreement would be reduced to writing," but argues that "that alone does not preclude enforcement under the agreement, especially when the emails establish the requisite elements of a binding agreement." Def.'s Br. 6-7; *see also id.* at 6 (conceding that the parties "did intend for a written agreement to be executed" but arguing that such intent "is not dispositive"). The "emails" Defendant refers to comprise one thread—not with Plaintiff, but with Plaintiff's husband—in which Mr. Klein states in response to a proposed counteroffer, "Ok. Send it." *See id.* at 2 (citing ECF No. 19-1 at 2). Plaintiff represents that this email was one of "283 communications" between Mr. Klein and AT&T representatives over the course of months of negotiations, *see* Pl.'s Opp'n ¶ 10, and the record reflects that Mr. Klein followed up three days later to clarify that "[his] response 'Ok. Send it.' was meant to express [his] willingness to review the proposed settlement agreement in detail." ECF No. 19-2 at 2. Defendant all but concedes that it shared Mr. Klein's understanding when it "forward[ed] the proposed written settlement agreement" to Mr. Klein to allow him to review it. Def.'s Br. 2. Accordingly, "nothing in the record suggests that either attorney took [Mr. Klein's] statement[, 'Ok. Send it,'] to be an explicit waiver of the signature requirement." *See Ciaramella*, 131 F.3d at 325.

The first *Winston* factor therefore weighs heavily in Plaintiff's favor.

**B.  Factor Two**

The second *Winston* factor, "whether there has been partial performance of the contract," 777 F.2d at 80, also weighs in Plaintiff's favor. Defendant argues that it weighs in its favor because "AT&T has partially performed by confirming deletion of the tradeline on plaintiff's credit report, which was a term of the settlement." Def.'s Br. 7. But AT&T submitted the

7

tradeline deletion request one month *before* Plaintiff allegedly entered into the purported oral agreement to settle, *see* ECF 19-4 at 2; Defendant cannot be said to have performed a term of a contract that the parties had not yet agreed to.  *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 58 (2d Cir. 2017), *as amended* (Aug. 21, 2017) (noting that "[c]ontracting parties are bound to perform on the terms that they *did* agree to.") (emphasis in original).  And at any rate, courts have found that partial performance can be counterbalanced by, for example, "[non-]payment of a settlement amount."  *Sprint Commc'ns Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 335-36 (E.D.N.Y. 2014).  Given that no payment has been made and no term of the purported settlement agreement has been performed, the Court concludes that the second factor favors Plaintiff.

### C. Factor Three

The Court next considers "whether all of the terms of the alleged contract have been agreed upon."  *Winston*, 777 F.2d at 80.  It concludes that they were not.

"The burden of establishing agreement as to all of the material terms of a contract is on a party seeking to enforce that contract."  *Sprint*, 5 F. Supp. 3d at 338.  Defendant attempts to meet that burden by pointing to *one* ambiguous email exchange between AT&T counsel and Plaintiff's husband, described at length above.  *See* Def.'s Br. 7-8.  In so doing, Defendant falls far short of meeting its burden.  The record reflects that both before and after the allegedly binding email agreement, the parties exchanged multiple counteroffers.  *See* ECF No. 19-1 at 6 (offering the Kleins "$5,000 plus debt waiver and tradeline deletion"); 5 (offering to settle with AT&T for $6,500); 3-4 (offering the Kleins "$5,250, plus debt waiver and tradeline deletion"); 3 (offering to settle with AT&T for $5,750); 2 (offering the Kleins $5,500); ECF No. 19-4 at 2 (offering to settle with AT&T for $7,500).  It is not clear to the Court from this record that the parties had reached an agreement on all material terms of settlement.

8

The Court "does not have the benefit of an on-the-record agreement from both parties to all of the material terms of the settlement," and in the absence of an executed settlement agreement, it cannot determine whether both parties agreed to the proposed settlement's material terms. *See Sprint*, 5 F. Supp. 3d at 336-37.  Given the circumstances, the Court cannot determine that no terms were left to negotiate, and it concludes that the third *Winston* factor weighs in Plaintiff's favor.

### D. Factor Four

Lastly, the Court considers "whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80.  It concludes that it is, and that this factor therefore also weighs in Plaintiff's favor.  "Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." *Ciaramella*, 131 F.3d at 326.  Here, the four-page proposed settlement agreement would "fully, finally, and forever settle, release, and discharge" Defendant and preclude Plaintiff from raising any claim related to the alleged violations in perpetuity.  *See* ECF No. 19-3 at ¶ 1.  In situations such as these, "the requirement that the agreement be in writing and formally executed simply cannot be a surprise to anyone." *Ciaramella*, 131 F.3d at 326; *see also Winston*, 777 F.2d at 83 (finding a four-page, multi-year settlement agreement that had gone through multiple rounds of edits between the parties was sufficiently complex to require a final and fully executed agreement in writing).

Considering the totality of the evidence—particularly the text of the proposed settlement agreement—and "afford[ing] a special solicitude to *pro se* [Plaintiff]," *Harris*, 818 F.3d at 57, the Court determines that the *Winston* factors weigh in Plaintiff's favor, and from its analysis concludes that Plaintiff never entered into a binding settlement agreement with AT&T.  Accordingly, Defendant's motion to enforce settlement is denied, and the stay of proceedings, *see* ECF No. 38, is lifted.

\*   \*   \*

Defendant has also moved to stay both (1) Plaintiff's motion for summary judgment, and (2) Defendant's own motion to compel arbitration. *See* ECF No. 19.

First, given that Plaintiff has withdrawn her motion for summary judgment, *see* ECF No. 24, Defendant's motion to stay Plaintiff's motion for summary judgment is denied as moot.

Second, in the absence of full briefing on the merits as to whether the claims in this case are subject to arbitration, the Court denies Defendant's motion to stay its motion to compel arbitration. On March 10, 2024, Plaintiff filed an opposition to Defendant's motion to compel arbitration. *See* ECF No. 15. However, on June 5, 2024, Plaintiff appeared to consent to arbitration. *See* ECF No. 41 (noting that the Court could "simply move the case to arbitration."). Within **one (1) week** of the filing of this opinion and order, Plaintiff shall file a letter on ECF expressly stating whether she consents to arbitration. If Plaintiff consents, the Court will grant Defendant's motion to compel arbitration, ECF No. 9, without further briefing. If Plaintiff does not consent to arbitration, Defendant shall file a reply to Plaintiff's opposition within **one (1) week** of Plaintiff's letter.

## CONCLUSION

For the reasons discussed herein, Defendant's motion to enforce settlement is **DENIED** with prejudice; its motion to stay Plaintiff's motion for summary judgment is **DENIED** as moot; and its motion to stay Defendant's own motion to compel arbitration is **DENIED** without prejudice.

The Clerk of Court is directed to terminate ECF No. 18.

SO ORDERED.

Dated: June 10, 2024
      New York, New York

                                                           DALE E. HO
                                           United States District Judge

11